1  MELINDA HAAG (CABN 132612)
   United States Attorney
2  ALEX G. TSE (CABN 152348)
   Chief, Civil Division
3  MICHELLE LO (NY Bar No. 4325163)
   Assistant United States Attorney
4
        450 Golden Gate Avenue, Box 36055
5       San Francisco, California 94102
        Telephone: (415) 436-7180
6       Facsimile:  (415) 436-6748
        Email:  Michelle.Lo@usdoj.gov
7
8  Attorneys for the Central Intelligence Agency

9

10              UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13

14  ANTHONY P.X. BOTHWELL,              Case No. 3:13-cv-05439-JSC

15              Plaintiff,              **DEFENDANT'S NOTICE OF MOTION
                                        AND MOTION FOR SUMMARY
16       v.                             JUDGMENT**

17  CENTRAL INTELLIGENCE AGENCY,        Date:  October 2, 2014
                                        Time:  9:00 a.m.
18              Defendant.              Place:  Courtroom F, 15th Floor
                                        Before:   Hon. Jacqueline Scott Corley
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

NOTICE OF MOTION AND MOTION TO DISMISS ........................................................... 1

RELIEF SOUGHT ................................................................................................................ 1

ISSUES TO BE DECIDED ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................... 1

I.       INTRODUCTION ..................................................................................................... 1

II.      FACTUAL AND PROCEDURAL BACKGROUND ............................................. 2

         A.       Plaintiff's February 2009 and July 2009 FOIA Requests ........................... 2

         B.       CIA's Processing of Plaintiff's FOIA Requests ......................................... 3

         C.       CIA's Search for Records Responsive to Plaintiff's FOIA Requests ......... 3

         D.       CIA's Responses to Plaintiff's FOIA Requests ......................................... 4

III.     LEGAL STANDARD ............................................................................................... 5

IV.      ARGUMENT ............................................................................................................ 6

         A.       The CIA Conducted An Adequate Search for Records Responsive to Items 1 and
                  3 of the February 2009 Request and to the July 2009 Request .................. 6

         B.       The CIA Properly Asserted A Glomar Response to Item 2 of the February 2009
                  Request ....................................................................................................... 9

                  1.       Special Considerations in National Security Cases ....................... 9

                  2.       CIA's Glomar Response was Proper Under Exemptions 1 & 3 ...... 10

                           a.       CIA's Glomar Response was Proper Under Exemption 1 ...... 12

                           b.       CIA's Glomar Response Was Proper Under Exemption 3 ...... 15

V.       CONCLUSION ......................................................................................................... 17

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

*Am. Civil Liberties Union  v. U.S. Dep't of Defense*,
628 F.3d 612 (D.C. Cir. 2011) ................................................................................ 16

4

*Am. Civil Liberties Union v. U.S. Dep't of Justice*,
265 F. Supp. 2d 20 (D.D.C. 2003) ......................................................................... 10

5

6

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .................................................................................................. 5

7

*Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*,
830 F.2d 331 (D.C. Cir. 1987) ............................................................................. 9, 15

8

9

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*,
473 F.3d 312 (D.C. Cir. 2006) ................................................................................. 7

10

*Barouch v. U.S. Dep't of Justice*,
962 F. Supp. 2d 30 (D.D.C. 2013) ........................................................................... 8

11

12

*Berman v. CIA*,
501 F.3d 1136 (9th. Cir. 2007) .......................................................................... 10, 16

13

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................. 5

14

*CIA v. Sims*,
471 U.S. 159 (1985) ..................................................................................... 6, 15, 16

15

16

*Citizens Comm'n on Human Rights v. FDA*,
45 F.3d 1325 (9th Cir. 1995) .................................................................................... 7

17

*Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*,
331 F.3d 918 (D.C. Cir. 2003) .............................................................................. 9, 10

18

19

*Davis v. Dep't of Justice*,
460 F.3d 92 (D.C. Cir. 2006) .................................................................................... 7

20

*Dobronski v. FCC*,
17 F.3d 275 (9th Cir. 1994) ...................................................................................... 5

21

22

*Elec. Privacy Info. Ctr. v. NSA,*,
678 F.3d 926 (D.C. Cir. 2012) ........................................................................... 10, 11

23

*Fitzgibbon v. CIA*,
911 F.2d 755 (D.C. Cir. 1990) ........................................................................... 10, 12

24

*Frugone v. CIA*,
169 F.3d 772 (D.C. Cir. 1999) ........................................................................... 10, 12

25

26

*Gardels v. CIA*,
689 F.2d 1100 (D.C. Cir. 1982) ........................................................................ 11, 16

27

28

*Goland v. CIA,*
  607 F.2d 339 (D.C. Cir. 1978) ............................................................................ 15, 16

*Ground Saucer Watch v. CIA,*
  692 F.2d 770 (D.C. Cir. 1981) .................................................................................. 7

*Hunt v. CIA,*
  981 F.2d 1116 (9th Cir. 1992) ........................................................... 10, 11, 12, 16

*Int'l Counsel Bureau v. U.S. Cent. Intelligence Agency,*
  774 F. Supp. 2d 262 (D.D.C. 2011) .................................................................. 11, 14

*Iturralde v. Comptroller of Currency,*
  315 F.3d 311 (D.C. Cir. 2003) ................................................................................. 7

*Kamman v. IRS,*
  56 F.3d 46 (9th Cir. 1995) ........................................................................................ 6

*King v. U.S. Dep't of Justice,*
  830 F.2d 210 (D.C. Cir. 1987) .................................................................... 5, 10, 12

*Lahr v. Nat'l Transp. Safety Bd.,*
  569 F.3d 964 (9th Cir. 2009) .................................................................................... 6

*Lane v. Dep't of the Interior,*
  523 F.3d 1128 (9th Cir. 2008) .................................................................................. 6

*Larson v. Dep't of State,*
  565 F.3d 857 (D.C. Cir. 2009) ........................................................... 10, 11, 12, 15

*Lawyers' Committee for Civil Rights of San Francisco Bay Area v. U.S. Dep't of the Treas.,*
  534 F. Supp. 2d 1126 (N.D. Cal. 2008) ................................................................... 7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) .................................................................................................. 5

*Military Audit Project v. Casey,*
  656 F.2d 724 (D.C. Cir. 1981) .................................................................................. 6

*Minier v. CIA,*
  88 F.3d 796 (9th Cir. 1996) ................................................................................. 6, 16

*Mosier v. Cent. Intelligence Agency,*
  No. 2:13-cv-00744-MCE-KJN, 2013 WL 6198197 (E.D. Cal. Nov. 27, 2013) ........................ 8, 9, 16

*Nation Magazine v. U.S. Customs Serv.,*
  71 F.3d 885 (D.C. Cir. 1995) .................................................................................... 6

*Nat'l Resources Defense Council v. U.S. Dep't of Defense,*
  388 F. Supp. 2d 1086 (C.D. Cal. 2005) .................................................................... 5

*Oglesby v. U.S. Dep't of Army,*
  920 F.2d 57 (D.C. Cir. 1990) ................................................................................. 6, 7

*People for the Am. Way Found. v. Nat'l Sec. Agency/Cent. Sec. Servs.,*
  462 F. Supp. 2d 21 (D.D.C. 2006) .......................................................................... 15

*Perry v. Block*,
  684 F.2d 121 (D.C. Cir. 1982) ............................................................................................ 6

*Phillippi v. CIA*,
  546 F.2d 1009 (D.C. Cir. 1976) ............................................................................ 4, 10, 11

*Porter v. Cal. Dep't of, Corrs.*,
  419 F.3d 885 (9th Cir. 2005) ................................................................................................ 5

*Ray v. Turner*,
  587 F.2d 1187 (D.C. Cir. 1978) ....................................................................................... 10

*SafeCard Servs., Inc. v. S.E.C.*,
  926 F.2d 1197 (D.C. Cir. 1991) ........................................................................................ 7

*Sakamoto v. U.S. Envt'l Prot. Agency*,
  443 F. Supp. 2d 1182 (N.D. Cal. 2006) .......................................................................... 5

*Subh v. Cent. Intelligence Agency*,
  760 F. Supp. 2d 66 (D.D.C. 2011) .................................................................................. 14

*U.S. Dep't of Justice v. Tax Analysts*,
  492 U.S. 136 (1989) ............................................................................................................. 6

*U.S. Dep't of State v. Ray*,
  502 U.S. 164 (1991) ............................................................................................................. 6

*Valencia-Lucena v. U.S. Coast Guard*,
  180 F.3d 321 (D.C. Cir. 1999) ......................................................................................... 7

*Weisberg v. Dep't of Justice*,
  705 F.2d 1344 (D.C. Cir. 1983) ....................................................................................... 8

*Wilbur v. CIA*,
  355 F.3d 675 (D.C. Cir. 2004) ......................................................................................... 8

*Wilner v. NSA,*,
  592 F.3d 60 (2d Cir. 2009) .......................................................................................... 11, 12

*Wolf v. CIA*,
  473 F.3d 370 (D.C. Cir. 2007) ................................................................................. 10, 11

*Zadvydas v. Davis*,
  533 U.S. 678 (2001) ........................................................................................................... 10

*Zemansky v. EPA*,
  767 F.2d 569 (9th Cir. 1985) ............................................................................................ 7

**FEDERAL STATUTES**

5 U.S.C. § 552 ................................................................................................. 1, 6, 12, 15

5 U.S.C. § 552(a)(4)(B) ..................................................................................................... 5

50 U.S.C. § 403-1(i)(1) ............................................................................................. 15, 16

50 U.S.C. § 403g ............................................................................................................ 16

**FEDERAL RULES**

Exec. Order 13,526 § 1.1(a), 75 Fed. Reg. 707 (Jan. 5, 2010) ................................. 12

Fed. R. Civ. P. 56 ...................................................................................................... 1, 5

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on October 2, 2014, at 9:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom F, 15th Floor, of the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, before the Honorable Jacqueline Scott Corley, United States Magistrate Judge, Defendant, Central Intelligence Agency ("CIA" or "Agency"), will move this Court for an order for summary judgment in its favor pursuant to Federal Rule of Civil Procedure 56.  The motion is based on this notice, the attached memorandum of points and authorities, the Declaration of Martha M. Lutz ("Lutz Decl.") and exhibits filed in support thereof, the Court's files and records in this matter, and other matters of which the Court takes judicial notice, and any oral argument that may be presented to the Court.

## RELIEF SOUGHT

The CIA seeks an order granting summary judgment in its favor as to all claims asserted in the Complaint.

## ISSUES TO BE DECIDED

1.      Whether the CIA conducted an adequate search for records in response to Plaintiff's requests under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, other than Plaintiff's request for records relating to "Jean Souetre, a.k.a. Michel Roux, a.k.a. Michel Mertz."

2.      Whether, in response to Plaintiff's request for records relating to "Jean Souetre, a.k.a. Michel Roux, a.k.a. Michel Mertz," the CIA properly issued a Glomar response refusing to confirm or deny the existence or nonexistence of responsive records under FOIA Exemptions 1 and 3.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

In this case arising under the FOIA, Plaintiff challenges the CIA's responses to two requests that he submitted in 2009 seeking certain records pertaining to three individuals allegedly connected to the assassination of President John F. Kennedy and two individuals allegedly connected to the assassination of Robert F. Kennedy.  As of this filing, the CIA has fulfilled all of its obligations under the FOIA.  As shown in the concurrently filed declaration of Martha M. Lutz, Chief of the CIA's Litigation Support Unit, the CIA conducted searches reasonably and logically designed to locate any responsive records

1  subject to the FOIA pertaining to the individuals identified in Plaintiff's FOIA requests, with the

2  exception of "Jean Souetre, a.k.a. Michel Roux, a.k.a. Michel Mertz," and located no such records.

3  With respect to Plaintiff's request for records pertaining to Mr. Souetre, the CIA determined that

4  confirming or denying the existence or nonexistence of such records would reveal information that is

5  classified and protected from disclosure by Executive Order and federal statutes, invoking FOIA

6  Exemptions 1 and 3.  This response, commonly known as a Glomar response, was also proper and

7  fulfilled CIA's FOIA obligations.  Accordingly, because the CIA has fully discharged its obligations

8  under the FOIA, the Court should grant summary judgment in the CIA's favor and dismiss the

9  complaint.

10  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

11       **A.     Plaintiff's February 2009 and July 2009 FOIA Requests**

12       This case concerns two FOIA requests that Plaintiff submitted to the CIA seeking records from

13  specific time periods pertaining to five individuals allegedly connected to the Kennedy assassinations.

14  Compl. ¶¶ 3-4.  Plaintiff submitted the first of the two requests, F-2009-00630, by letter dated February

15  11, 2009.  Lutz Decl. ¶ 7 & Exs. 1-2.  This request sought the following records:  (1) "[a]ll records

16  within the possession, custody, or control of the CIA, generated in July 1976 that relate to Johnny

17  ROSELLI, a.k.a. John ROSELLI, a.k.a. Filippo SACCO"; (2) "[a]ll records within the possession,

18  custody, or control of the CIA, generated in October 1963 that related to Jean SOUETRE, a.k.a. Michel

19  ROUX a.k.a Michel MERTZ"; and (3) "[a]ll records within the possession, custody, or control of the

20  CIA, generated in October 1963 that relate to both David Morales and President John F. KENNEDY."

21  *See id.* Ex. 1.  In response to Plaintiff's request, the CIA responded that it had searched a database

22  containing records produced in response to prior FOIA requests but did not locate any responsive

23  records pertaining to either Mr. Roselli or Mr. Morales that were generated during the requested

24  timeframe.  *See id.* ¶ 8 & Ex. 2.  With regard to Plaintiff's request for records relating to Mr. Souetre,

25  the CIA responded that its search of this same database located material referring in general to the

26  expulsion of a Jean Souetre from the United States in November 1963, but was not generated in October

27  1963.  *See id.*  The CIA further asserted a Glomar response, stating that it could neither confirm nor

28  deny the existence or nonexistence of records responsive to this particular request because the existence

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
C 13-5439 JSC                                    2

or nonexistence of records was then "currently and properly classified and is intelligence sources and methods information that is protected from disclosure by section 6 of the CIA Act of 1949, as amended," and therefore denied this request pursuant to Exemptions 1 and 3. *See id.* Ex. 2. Plaintiff appealed the CIA's decision, and with respect to his request for records relating to Mr. Roselli, changed the timeframe sought from July 1976 to June 1976. *See id.* ¶¶ 9-10 & Exs. 3-4.

Plaintiff submitted the second of the two requests, F-2009-01427, by letter dated July 12, 2009. *See id.* ¶¶ 13-14 & Ex. 5. This request sought the following records: (1) "[a]ll records within the possession, custody or control of the CIA, generated in May through July 1968 that relate to Thane Eugene CESAR"; and (2) "[a]ll records within the possession, custody or control of the CIA, generated in May through July 1968, that relate to Enrique HERNANDEZ, a.k.a. Hank HERNANDEZ." *See id.* ¶ 13 & Ex. 5. In response to Plaintiff's request, the CIA informed the Plaintiff that it did not locate any records responsive to this request. *See id.* ¶ 16 & Ex. 8. Plaintiff did not appeal the CIA's final decision on this request. *See id.* ¶ 16.

### B. CIA's Processing of Plaintiff's FOIA Requests

Plaintiff filed this action on November 22, 2013. ECF No. 1. After litigation commenced, the parties agreed to a temporary stay in order to perfect the administrative appeal process for both of the FOIA requests Plaintiff submitted in 2009. ECF No. 24. The CIA processed Plaintiff's appeals in the May 2014 Agency Release Panel meeting. *See* Lutz Decl. ¶¶ 12, 18.

### C. CIA's Search for Records Responsive to Plaintiff's FOIA Requests

All FOIA requests submitted to the CIA are initially sent to the Information and Privacy Coordinator for the Agency's Information Management Services ("IMS"). *See id.* ¶ 20. Within IMS, an Information Review and Release Analyst begins to locate responsive records by querying databases to determine whether the CIA previously released any responsive records that could readily be disclosed to the requester. *See id.* ¶¶ 20-21. The analyst next determines which CIA components might reasonably be expected to have additional responsive records. *See id.* ¶ 22. All CIA components are contained within one of five directorates or office clusters: (1) the National Clandestine Service ("NCS"); (2) the Directorate of Intelligence ("DI"); (3) the Directorate of Science and Technology ("DS&T"); (4) the Directorate of Support ("DS"); and (5) the Director of CIA Area ("DIR Area"). *See id.* The NCS is

responsible for the clandestine collection of foreign intelligence from human sources, and its system of records contains information on persons who are of foreign intelligence or counterintelligence interest to CIA and other U.S. Government agencies. *See id.* ¶ 23. The DI analyzes, interprets, and forecasts foreign intelligence issues and world events of importance to the United States, and produces finished intelligence reports for dissemination to policymakers in the U.S. Government. *See id.* ¶ 24. The DS&T creates and applies technologies to meet intelligence requirements. *See id.* ¶ 25. The DS provides the CIA with mission-critical support, and oversees personnel protection, security, facilities, communication, logistics, training, financial management, medical services, and human resources. *See id.* ¶ 26. The DS also maintains records on all current and former CIA employees, whether contract or staff, as well as other individuals for whom security processing or evaluation has been required. *See id.* The DIR Area includes offices directly responsible to the Director of CIA, such as the Office of General Counsel, the Office of Inspector General, and the Office of Congressional Affairs. *See id.* ¶ 32.

Upon review of Plaintiff's requests, the Information Review and Release Analyst identified the NCS and the DS as the directorates reasonably likely to possess responsive records (if any) subject to FOIA, and transmitted copies of the requests to the Information Review Office within each directorate. *See id.* ¶¶ 29, 32. The NCS and the DS separately conducted searches of their respective system of records using the names of the individuals (including the aliases) in Plaintiff's requests, but did not locate any responsive records. *See id.* ¶ 38. Separately and in addition, because the requests appeared to allege a connection to the assassination of President Kennedy, the CIA also searched a database of all federal records relating to the assassination that were collected pursuant to the President John F. Kennedy Assassination Records Collection Act of 1992. *See id.* ¶ 36. The CIA searched its electronic database of these documents for responsive records using the names (including the aliases) provided in Plaintiff's FOIA requests, but did not locate any responsive records. *See id.* ¶ 37.

### D.    CIA's Responses to Plaintiff's FOIA Requests

By letters dated June 10, 2014, the CIA informed Plaintiff of the denials of his appeals in full. *See id.* ¶ 38. With regard to the appeal of F-2009-00630, the CIA determined that it was unable to locate any records responsive to Items 1 and 3 of Plaintiff's request. *See id.* ¶ 38 & Ex. 9. Regarding Item 2, the CIA invoked a "Glomar" response pursuant to *Phillippi v. CIA*, 546 F.2d 1009 (D.C. Cir.

1 1976), asserting that confirming or denying the existence or nonexistence of such records would reveal

2 classified information that is protected from disclosure by executive order and statute, and therefore

3 denied this request based on FOIA Exemptions 1 and 3. *See id.* With regard to the appeal of F-2009-

4 01427, the CIA determined that it was unable to locate any responsive records. *See id.* ¶ 38 & Ex. 10.

5 **III. LEGAL STANDARD**

6     A motion for summary judgment is appropriately granted when the pleadings and evidence

7 demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to

8 judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247

9 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment bears

10 the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 223.

11 A genuine issue of material fact is one that "might affect the outcome of the suit under the governing

12 law." *Anderson*, 477 U.S. at 248. In determining whether there exists a genuine issue of material fact,

13 the court must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to

14 the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986);

15 *Porter v. Cal. Dep't of Corrs.*, 419 F.3d 885, 891 (9th Cir. 2005). Once the moving party has met its

16 burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . .

17 must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248.

18     Summary judgment is generally recognized as a proper avenue for resolving a FOIA claim. *See*

19 *Sakamoto v. U.S. Envt'l Prot. Agency*, 443 F. Supp. 2d 1182, 1188 (N.D. Cal. 2006); *Nat'l Resources*

20 *Defense Council v. U.S. Dep't of Defense*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005) ("Summary

21 judgment is the procedural vehicle by which nearly all FOIA cases are resolved."). An agency may

22 withhold records requested under the FOIA where a record falls within one of nine statutory exceptions.

23 *See Dobronski v. FCC*, 17 F.3d 275, 277 (9th Cir. 1994). The government bears the burden of proving

24 that any withheld information falls within the exemption it invokes. *See* 5 U.S.C. § 552(a)(4)(B); *King*

25 *v. U.S. Dep't of Justice*, 830 F.2d 210, 217 (D.C. Cir. 1987). The government may meet its burden by

26 submitting agency affidavits or declarations that "describe the documents and the justifications for

27 nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls

28 within the claimed exemption, and are not controverted by either contrary evidence in the record nor by

1  evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981);

2  *Kamman v. IRS*, 56 F.3d 46, 48 (9th Cir. 1995) (noting that government affidavits "may not rely upon

3  conclusory and generalized allegations of exemptions"). "If the affidavits contain reasonably detailed

4  descriptions of the documents and allege facts sufficient to establish an exemption, the district court

5  need look no further" and may grant summary judgment to the government based entirely on the basis of

6  information set forth in the affidavit. *Lane v. Dep't of the Interior*, 523 F.3d 1128, 1135-36 (9th Cir.

7  2008); *Kamman*, 56 F.3d at 48; *Military Audit Project*, 656 F.2d at 738. Here, the CIA has submitted

8  the Declaration of Martha M. Lutz to explain and justify its response to Plaintiff's FOIA requests.

9  **IV.  ARGUMENT**

10  The purpose of the FOIA is to facilitate public access to government documents. *Lahr v. Nat'l

11  Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (citing *U.S. Dep't of State v. Ray*, 502 U.S. 164,

12  173 (1991)). "Congress recognized, however, that public disclosure is not always in the public interest."

13  *CIA v. Sims*, 471 U.S. 159, 166-67 (1985); *Lahr*, 569 F.3d at 973 ("FOIA contemplates that some

14  information may legitimately be kept from the public."). The FOIA thus requires that a federal agency

15  release all agency records responsive to a properly submitted request unless such records or portions

16  thereof are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b);

17  *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989); *Lahr*, 569 F.3d at 973 (citing 5

18  U.S.C. § 552(b)(1)-(9)). Once the court determines that an agency has released all non-exempt material,

19  it has no further judicial function to perform under the FOIA and the FOIA claim is moot. *Perry v.

20  Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *see also Minier v. CIA*, 88 F.3d 796, 803 (9th Cir. 1996). As

21  demonstrated below, the CIA conducted a reasonable search for records responsive to Items 1 and 3 of

22  F-2009-00630 and in Response to F-2009-01427, and properly issued a Glomar response with regard to

23  Item 2 of F-2009-00630.

24  **A.   The CIA Conducted An Adequate Search for Records Responsive to Items 1 and 3
        of the February 2009 Request and to the July 2009 Request**

25  Under the FOIA, an agency "must make a good faith effort to conduct a search for the requested

26  records, using methods which can be reasonably expected to produce the information requested."

27  *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995) (quoting *Oglesby v. U.S.

28

1    *Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).  If it conducts such a search, an agency's search for

2    records is adequate.  *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999);

3    *Oglesby*, 920 F.2d at 68.  The "issue to be resolved is not whether there might exist any other documents

4    possibly responsive to the request, but rather whether the search for those documents was adequate."

5    *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995); *Zemansky v. EPA*, 767

6    F.2d 569, 571 (9th Cir. 1985).  A search is not inadequate merely because it failed to "uncover[] every

7    document extant."  *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also*

8    *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA

9    search is generally determined not by the fruits of the search, but by the appropriateness of the methods

10   used to carry out the search.").  Rather, a search is inadequate only if the agency fails to "show, with

11   reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant

12   documents."  *Oglesby*, 920 F.2d at 68.  An adequate search is determined on a case-by-case basis.  *Davis*

13   *v. Dep't of Justice*, 460 F.3d 92, 103 (D.C. Cir. 2006) ("[T]he adequacy of an agency's search is

14   measured by a standard of reasonableness, and is dependent upon the circumstances of the case."

15   (internal quotation marks and citation omitted)).

16        An agency may establish the adequacy of its search by submitting a reasonably detailed,

17   nonconclusory affidavit describing its efforts, setting forth the search terms and type of search

18   performed, and "averring that all files likely to contain responsive materials (if such records exist) were

19   searched."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1990); *Baker &*

20   *Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006); *Zemansky*, 767 F.2d at

21   571.  Affidavits describing agency search procedures are sufficient for the purposes of summary

22   judgment if they are relatively detailed in their description of the files searched and the search

23   procedures.  *Zemansky*, 767 F.2d at 571.  In evaluating the adequacy of a search, courts recognize that

24   "[a]gency affidavits enjoy a presumption of good faith, which will withstand purely speculative claims

25   about the existence of other documents."  *Ground Saucer Watch v. CIA*, 692 F.2d 770, 771 (D.C. Cir.

26   1981).  Once an agency makes a showing that it conducted a search in good faith that was reasonably

27   calculated to uncover all relevant documents, the plaintiff can rebut the presumption of good faith

28   accorded to the agency's affidavit by presenting non-speculative evidence of bad faith.  *See Lawyers'*

*Committee for Civil Rights of San Francisco Bay Area v. U.S. Dep't of the Treas.*, 534 F. Supp. 2d 1126, 1137 (N.D. Cal. 2008).  An agency's "failure to turn up a particular document, or mere speculation that as yet uncovered documents might exist, does not undermine the determination that the agency conducted an adequate search for requested records."  *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004) (per curiam).

Here, as Ms. Lutz attests, the CIA determined that the NCS and the DS were most likely to possess records pertaining to the individuals identified in items 1 and 3 of Plaintiff's February 2009 FOIA request and to Plaintiff's July 2009 FOIA request, and tasked these two directorates with conducting searches.  *See* Lutz Decl. ¶¶ 32-34.  The NCS was deemed reasonably likely to possess any responsive records because of its responsibility for the clandestine collection of foreign intelligence from human sources.  *See id.* ¶ 33.  The DS was also deemed reasonably likely to possess any responsive records because it administered the personnel and physical security functions of the CIA and held the records of individuals who were applicants, contractors, or employees of the CIA or otherwise had an overt or acknowledged relationship with the CIA.  *See id.* ¶ 34.  The NCS and the DS each conducted searches of their respective system of records using the names of the individuals (including the aliases) in Plaintiff's requests, but did not locate any responsive records.  *See id.* ¶ 38.  The search conducted by the NCS and the DS utilizing the names of the individuals specified in Plaintiff's requests was logical and "reasonably calculated to uncover all relevant documents."  *Weisberg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)*; see also Mosier v. Cent. Intelligence Agency*, No. 2:13-cv-00744-MCE-KJN, 2013 WL 6198197, at *13 (E.D. Cal. Nov. 27, 2013) (concluding that CIA conducted reasonable searches where declarant explained that the NCS and the DS directorates were likely to have responsive records given the subject matter of Plaintiff's FOIA request); *Barouch v. U.S. Dep't of Justice*, 962 F. Supp. 2d 30, 54-55 (D.D.C. 2013) (finding that agencies reasonably "searched the databases that were likely to turn up documents responsive to plaintiff's requests using search terms that correspond to the scope of the requests").  As for the DI, DIR Area, and DS&T directorates, the CIA reasonably determined that there was no reason to believe they would have responsive records given the nature of Plaintiff's requests.  Lutz Decl. ¶ 35.  There was no indication that the subjects of the FOIA requests, as formulated, had a connection to CIA intelligence analysis, the Director's offices, or CIA intelligence

technology, and thus, no indication that the files of the DI, the DIR Area, or the DS&T were reasonably likely to contain responsive records.  *See id.  See Mosier*, 2013 WL 6198197, at \*13-\*14 (finding that CIA properly limited its search to two directorates "in light of the facts presented to the Agency in Plaintiff's FOIA request").  As a further measure, rather than limiting its search to the Agency's directorates, the CIA additionally searched a database containing federal records pertaining to the assassination of President Kennedy in light of the nature of Plaintiff's FOIA requests, but did not uncover any responsive records there, either.  *See* Lutz Decl. ¶ 36.

The foregoing thus establishes that the CIA's search process was designed to capture any records responsive to the Plaintiff's requests.  Accordingly, because the CIA searched for the very records that were sought by Plaintiff, the Court should find that the CIA conducted a thorough search reasonably calculated to uncover responsive records.

**B.    The CIA Properly Asserted A Glomar Response to Item 2 of the February 2009 Request**

### 1.    *Special Considerations in National Security Cases*

With respect to Plaintiff's request in item 2 of his February 2009 request for records generated in October 1963 relating to "Jean Souetre, a.k.a. Michel Roux, a.k.a. Michel Mertz," the CIA determined that confirming or denying the existence or nonexistence of such records would reveal information that is classified and protected from disclosure by Executive Order and federal statutes designed to protect national security information.  Specifically, as Ms. Lutz explained, the CIA invoked a Glomar response because the CIA does not acknowledge an intelligence interest in foreign nationals such as Mr. Souetre.  *See* Lutz Decl. ¶ 39.  Controversies over information withheld on these grounds by their nature "implicat[e] national security, a uniquely executive purview."  *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 926-27 (D.C. Cir. 2003).  While courts review *de novo* an agency's withholding of information pursuant to a FOIA request, "*de novo* review in FOIA cases is not everywhere alike."  *Ass'n of Retired R.R. Workers, Inc. v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987).  Although *de novo* review calls for "an objective, independent judicial determination," courts nonetheless defer to an agency's determination in the national security context, acknowledging that "the executive ha[s] unique insights into what adverse [e]ffects might occur as a result of public disclosure of

a particular classified record." *Ray v. Turner*, 587 F.2d 1187, 1194 (D.C. Cir. 1978) (internal quotation marks omitted). Courts have recognized the "propriety of deference to the executive in the context of FOIA claims which implicate national security." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927-28 (citing *Zadvydas v. Davis*, 533 U.S. 678, 696 (2001)); *Berman v. CIA*, 501 F.3d 1136, 1140 (9th. Cir. 2007) (observing that "courts are required to give 'great deference' to the CIA's assertion that a particular disclosure could reveal intelligence sources or methods").

Accordingly, courts have "consistently deferred to executive affidavits predicting harm to the national security, and have found it unwise to undertake a searching judicial review." *Ctr. for Nat'l Sec. Studies*, 331 F.3d at 927; *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009) ("Today we reaffirm our deferential posture in FOIA cases regarding the 'uniquely executive purview' of national security."). Thus, in the national security context, "the reviewing court must give 'substantial weight'" to agency declarations. *Am. Civil Liberties Union v. U.S. Dep't of Justice*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (quoting *King*, 830 F.2d at 217); *see Frugone v. CIA*, 169 F.3d 772, 775 (D.C. Cir. 1999); *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990). In according such deference, "a reviewing court must take into account . . . that any affidavit or other agency statement of threatened harm to national security will always be speculative to some extent, in the sense that it describes a potential future harm." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007) (internal quotation marks omitted); *see Berman*, 501 F.3d at 1143 (explaining that the CIA "need not demonstrate to a certainty that disclosure will result in intelligence sources or methods being revealed").

### 2.   CIA's Glomar Response was Proper Under Exemptions 1 & 3

Where an agency responds to a FOIA request by neither confirming nor denying the existence of responsive documents, in what is commonly known as a Glomar response, the agency "must demonstrate that acknowledging the mere existence of responsive records would disclose exempt information." *Elec. Privacy Info. Ctr. v. NSA*, 678 F.3d 926, 931 (D.C. Cir. 2012); *Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976) (upholding CIA's refusal to confirm or deny existence of records of CIA connection to ship named Hughes Glomar Explorer); *see Hunt v. CIA*, 981 F.2d 1116, 1118 (9th Cir. 1992). In cases involving a Glomar response, the supporting affidavit must justify the Glomar

1  response based on "'general exemption review standards established in non-*Glomar* cases.'"  *Elec.*

2  *Privacy Info. Ctr.*, 678 F.3d at 931 (quoting *Wolf*, 473 F.3d at 374-75).

3        The CIA, invoking Exemptions 1 and 3, properly refused to confirm or deny the existence or

4  nonexistence of responsive records relating to Mr. Souetre.  Courts have recognized the propriety of a

5  Glomar response in the circumstances presented here.  *See Int'l Counsel Bureau v. U.S. Cent.*

6  *Intelligence Agency*, 774 F. Supp. 2d 262, 269-74 (D.D.C. 2011).  "The *Glomar* doctrine is well settled

7  as a proper response to a FOIA request because it is the only way in which an agency may assert that a

8  particular FOIA statutory exemption covers the 'existence or nonexistence of the requested records' in a

9  case in which a plaintiff seeks such records."  *Wilner v. NSA*, 592 F.3d 60, 68 (2d Cir. 2009) (quoting

10  *Phillippi*, 546 F.2d at 1012).  A Glomar response is appropriate when "to confirm or deny the existence

11  of records . . . would cause harm cognizable under a FOIA exemption."  *Gardels v. CIA*, 689 F.2d 1100,

12  1103 (D.C. Cir. 1982); *see Hunt*, 981 F.2d at 1120 (upholding CIA's Glomar response where it invoked

13  FOIA Exemption 3).  When an agency issues a proper Glomar response it need not conduct a search at

14  all.  *See Elec. Privacy Info. Ctr.*, 678 F.3d at 934-35.  Accordingly, no adequacy-of-search analysis is

15  appropriate with respect to CIA's determination not to confirm or deny the existence or nonexistence of

16  records revealing a classified relationship with Mr. Souetre.  *See Wolf*, 473 F.3d at 374 n.4.

17        Exemptions 1 and 3 "cover not only the content of protected government records but also the fact

18  of their existence, if that fact properly falls within the exemption."  *Larson*, 565 F.3d at 861; *see Hunt*,

19  981 F.2d at 1120.  "FOIA Exemptions 1 and 3 are independent; agencies may invoke the exemptions

20  independently and courts may uphold agency action under one exemption without considering the

21  applicability of the other."  *Larson*, 565 F.3d at 862-63 (citing *Gardels*, 689 F.2d at 1106-07).  Here, the

22  CIA has submitted a detailed declaration explaining why the fact of the existence or nonexistence of

23  responsive relating to Mr. Souetre is exempt from disclosure pursuant to Exemptions 1 and 3.  *See Hunt*,

24  981 F.2d at 1120 (explaining that the CIA's right to issue a Glomar response depends on whether its

25  affidavits support exemption from FOIA under either Exemption 1 or Exemption 3, and that the court

26  was required to accord "substantial weight" to those affidavits).

27

28

1

### a. CIA's Glomar Response was Proper Under Exemption 1

2       FOIA Exemption 1 protects from disclosure records that are "specifically authorized under

3 criteria established by an Executive order to be kept secret in the interest of national defense or foreign

4 policy" and "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).

5 Executive Order 13,526 currently governs the classification and safeguarding of national security

6 information. *See* Exec. Order No. 13,526, 75 Fed. Reg. 707 (Jan. 5, 2010). Section 3.6(a) of Executive

7 Order 13,526 expressly authorizes an agency's Glomar response to protect classified information. *See*

8 *id.* § 3.6(a) ("An agency may refuse to confirm or deny the existence or nonexistence of requested

9 records whenever the fact of the existence or nonexistence is itself classified under this order or its

10 predecessors."); *Wilner*, 592 F.3d at 71.

11       An agency establishes that it has properly withheld information under Exemption 1 if it

12 demonstrates that it has met the classification requirements of the Executive Order 13,526. Section 1.1

13 of the Executive Order sets forth four requirements for the classification of national security

14 information: (1) an original classification authority classifies the information; (2) the U.S. Government

15 owns, produces, or controls the information; (3) the information is within one of eight protected

16 categories listed in section 1.4 of the Executive Order; and (4) the original classification authority

17 determines that the unauthorized disclosure of the information reasonably could be expected to result in

18 a specified level of damage to the national security, and the original classification authority is able to

19 identify or describe the damages. Exec. Order 13,526 § 1.1(a), 75 Fed. Reg. 707 (Jan. 5, 2010). The

20 Court must give "substantial weight" to agency affidavits concerning classified information. *See Hunt*,

21 981 F.2d at 1120; *King*, 830 F.2d at 217. Also, the Court must defer to the expertise of agencies

22 involved in national security and foreign policy, particularly those agencies' predictive judgments of

23 potential harm to national security. *See Hunt*, 981 F.2d at 1120; *Larson*, 565 F.3d at 865; *Frugone*, 169

24 F.3d at 775; *Fitzgibbon*, 911 F.2d at 766. The CIA has demonstrated that its Glomar response was

25 proper under Exemption 1 because the fact of the existence or nonexistence of records relating to Mr.

26 Souetre, a foreign national, is currently and properly classified. Ms. Lutz holds original classification

27 authority at the top-secret level and has provided a declaration affirming that the existence or

28 nonexistence of such records is a classified fact. Lutz Decl. ¶¶ 2, 39-47. That fact is information owned

1  by and in the control of the U.S. Government. *Id.* ¶¶ 48-64. As explained by Ms. Lutz, to confirm the

2  existence or nonexistence of such records would reveal information covered by section 1.4 of the

3  Executive Order, namely, intelligence activities, intelligence sources, and intelligence methods. *Id.*

4  ¶¶ 51-64.

5      To begin, if the CIA confirmed or denied that it possessed records relating to Mr. Souetre, the

6  confirmation or denial would tend to reveal whether or not the CIA has or had intelligence activities

7  directed toward Mr. Souetre or his associates. *Id.* ¶¶ 53-54. Such a response could reveal secret

8  information about the CIA's intelligence capabilities, authorities, interests, and resources, and can

9  provide fodder for terrorist organizations, foreign intelligence services, and other hostile groups to

10  defeat CIA activities and to attack the United States and its interests. *Id.* Even where the subject of an

11  intelligence interest is no longer of interest or engaged in operations, CIA's adversaries continue to seek

12  such information to glen information about how CIA currently focus its intelligence activities. *Id.*

13      In addition to revealing CIA's intelligence activities, a response could identify human sources

14  CIA relies upon to gather intelligence information. *Id.* ¶¶ 55-58. Human intelligence sources can be

15  expected to furnish information to the CIA only when they are confident that the CIA can and will do

16  everything in its power to prevent the public disclosure of their cooperation. *Id.* Official

17  acknowledgement concerning an individual who has or had a covert relationship with the CIA would

18  seriously damage the United States' credibility with all other current intelligence sources and

19  compromise the operational assistance the source is supplying. *Id.* This is not a harm that diminishes

20  with the passage of time. *Id.* Thus, in this case, acknowledging the existence or nonexistence of records

21  on Souetre reasonably could be expected to cause damage to the national security by indicating whether

22  or not CIA maintained any human intelligence sources related to an interest in Souetre and identifying

23  the access or lack of access any such sources had to intelligence concerning him. *See id.*

24      Furthermore, a response also risks the disclosure of business practices and methodological tools

25  used by CIA to accomplish its mission. *Id.* ¶¶ 59-64. As Ms. Lutz describes, "[o]nce an intelligence

26  method or its use in a certain situation is discovered, its continued successful use by the CIA is

27  jeopardized." *Id.* By admitting that it possesses intelligence information about a particular individual,

28  the CIA essentially admits that one or more of his activities have been detected by the CIA and reveals

that countermeasures will be necessary to avoid future detection of similar activities.  *Id.*  If, on the other hand, the CIA denies that it possesses intelligence information about a particular individual, it admits that it has not detected any activities by that individual and that the efforts by the individual or others similarly situated to conceal their activities have been successful.  *Id.*  Even where the individual is no longer active, acknowledging an absence of CIA records would signal to his organization and associates that his activities were never detected by the Agency and permit such activities to continue.  *Id.* In this case, acknowledging the existence or nonexistence of records on Mr. Souetre reasonably could be expected to cause damage to the national security by alerting individuals of intelligence interest to what methods the CIA employed or did not employ, thus allowing those individuals to determine what countermeasures, if any, to take in the future to avoid detection.  *Id.*  As a final matter, Ms. Lutz explained that confirming or denying the existence of responsive information on foreign nationals can be particularly harmful in that it could adversely affect U.S. foreign relations.  *Id.* ¶ 63.  Official acknowledgment that the CIA maintains information on a particular foreign national could be construed by a foreign government to mean that CIA has a particular intelligence interest in that country or is collecting intelligence information on or is recruiting its citizens, and could result in negative diplomatic and/or economic responses from other countries.  *See id.*

In short, as Ms. Lutz's declaration establishes, confirming the fact of the existence or nonexistence of responsive records relating to Mr. Souetre could disclose information about CIA's intelligence activities, sources, and methods, and would reasonably be expected to cause damage to national security and foreign relations.  Moreover, the effectiveness of a Glomar response depends on CIA's consistent use of it in all cases where the existence or nonexistence of records is a classified fact, irrespective of whether the CIA actually possesses responsive records.  *Id*. ¶¶ 40-44.  Recognizing the importance of this need for consistency, courts have upheld Glomar responses to protect the security interests Ms. Lutz describes here.  *See, e.g.*, *Int'l Counsel Bureau*, 774 F. Supp. 2d at 269-72 (concluding that CIA's Glomar response was appropriately supported under Exemption 1 where declarant explained that information sought would reveal intelligence activity, source, and/or method, and could harm national security and adversely affect foreign relations); *Subh v. Cent. Intelligence Agency*, 760 F. Supp. 2d 66, 72-73 (D.D.C. 2011) (finding CIA's Glomar response appropriate in

context of person-specific FOIA request for records concerning any intelligence checks on that individual); *People for the Am. Way Found. v. Nat'l Sec. Agency/Cent. Sec. Servs.*, 462 F. Supp. 2d 21, 31 (D.D.C. 2006) (upholding Glomar response by National Security Agency to request for records related to surveillance of plaintiff because confirmation or denial that plaintiff was an intelligence interest would permit adversaries to draw conclusions about NSA's capabilities, sources, and methods).

Accordingly, because the CIA properly issued a Glomar response pursuant to Exemption 1, summary judgment should be granted in favor of the CIA.

### b.       *CIA's Glomar Response Was Proper Under Exemption 3*

The CIA also invoked FOIA Exemption 3 in support of its refusal to confirm or deny the existence or nonexistence of records relating to Mr. Souetre. This exemption provides a separate and independent basis for the CIA's Glomar response. *Larson*, 565 F.3d at 862-63. Exemption 3 protects from disclosure information that is protected by a separate statute, "provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The "purpose of Exemption 3 [is] to assure that Congress, not the agency, makes the basic nondisclosure decision." *Ass'n of Retired R.R. Workers*, 830 F.2d at 336. Courts apply a two-pronged inquiry when evaluating an agency's invocation of Exemption 3. *See Sims*, 471 U.S. at 167-68. First, the court must determine whether the statute identified by the agency qualifies as an exempting statute under Exemption 3. Second, the court should consider whether the withheld material falls within the scope of the exempting statute. *See id*. The applicability of Exemption 3 "depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of the withheld material within the statute's coverage." *Ass'n of Retired R.R. Workers*, 830 F.2d at 336 (quoting *Goland v. CIA*, 607 F.2d 339, 350 (D.C. Cir. 1978)). .

In refusing to confirm or deny the existence or nonexistence of records relating to Mr. Souetre, the CIA invoked two statutes: (1) Section 102A(i)(1) of the National Security Act, which states that the Director of National Intelligence "shall protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 403-1(i)(1); and (2) the Central Intelligence Agency Act of 1949 ("CIA Act"),

1   requiring the protection of "intelligence sources and methods from unauthorized disclosure" and

2   exempting the CIA from "the provisions of any other law which requires the publication or disclosure of

3   the . . . functions . . . [of] the Agency," 50 U.S.C. § 403g. *See* Lutz Decl. ¶¶ 66-67.  Both statues qualify

4   as withholding statues for purposes of Exemption 3.  *See, e.g.*, *Goland*, 607 F.2d at 349; *Am. Civil*

5   *Liberties Union v. U.S. Dep't of Defense*, 628 F.3d 612, 619 (D.C. Cir. 2011); *Minier*, 88 F.3d at 801;

6   *Hunt*, 981 F.2d at 1118; *Berman*, 501 F.3d at 1139; *Mosier*, 2013 WL 6198197, at *5-*8.  The Supreme

7   Court has recognized the "wide-ranging authority" provided by the National Security Act, entrusting the

8   CIA to "weigh the variety of complex and subtle factors in determining whether disclosure of

9   information may lead to an unacceptable risk of compromising the Agency's intelligence-gathering

10  process." *Sims*, 471 U.S. at 180.  Rather than place any limit on the scope of the National Security Act,

11  "Congress simply and pointedly protected all sources of intelligence that provide, or are engaged to

12  provide, information the Agency needs to perform its statutory duties with respect to foreign

13  intelligence." *Id*. at 169-70.  "In order to further implement" the National Security Act's purpose of

14  "protecting intelligence sources and methods from unauthorized disclosure," under the CIA Act, the

15  CIA may protect information that would reveal core CIA functions, including its intelligence sources

16  and methods. *See Goland*, 607 F.2d at 351.  As explained above and by Ms. Lutz, confirming or

17  denying the fact of the existence or nonexistence of responsive records that would reveal a classified

18  connection between CIA and Mr. Souetre would reveal CIA intelligence sources and methods because it

19  would dislcose whether CIA had an intelligence interest in Mr. Souetre.  That information falls squarely

20  within the protective scope of the National Security Act and the CIA Act.

21          The mandate to withhold information pursuant to the National Security Act and CIA Act is

22  broader than CIA's authority under Exemption 1. *See Gardels*, 689 F.2d at 1107.  Unlike section

23  1.1(a)(4) of Executive Order 13,526, neither the National Security Act nor the CIA Act requires CIA to

24  determine that the disclosure of the information would be expected to result in damage to national

25  security. *Compare* 50 U.S.C. §§ 403-1(i)(1), 403g *with* Exec. Order 13,526 § 1.1(a)(4); *cf. Hunt*, 981

26  F.2d at 1120 ("The CIA's central concern here is that disclosure would reveal CIA sources and methods;

27  there is no requirement . . . that the revelation cause a high degree of damage to CIA intelligence

28  gathering.").  Congress has already made that determination by enacting these statutes.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT
C 13-5439 JSC                                16

1    In sum, the CIA properly issued a Glomar response to Item 2 of Plaintiff's February 2009 FOIA

2    request because the fact of the existence or nonexistence of records relating to Mr. Souetre is

3    information within the scope of two withholding statutes, the National Security Act and the CIA Act,

4    and is therefore exempt from disclosure under Exemption 3.  The Court should therefore grant summary

5    judgment in favor of the CIA.

6    **V.       CONCLUSION**

7    For all of the foregoing reasons, the CIA respectfully requests that the Court grant summary

8    judgment in its favor and dismiss the complaint in its entirety.

9    DATED: August 11, 2014                              Respectfully submitted,

10                                                        MELINDA HAAG
                                                          United States Attorney
11
                                                           /s/ *Michelle Lo*
12                                                        MICHELLE LO
                                                          Assistant United States Attorney
13
                                                          Attorneys for the CIA
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28