United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY P.X. BOTHWELL,<br><br>            Plaintiff,<br><br>      v.<br><br>JOHN O. BRENNAN, et al.,<br><br>            Defendants. | Case No. 13-cv-05439-JSC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 39 |

Plaintiff Anthony P.X. Bothwell ("Bothwell"), an attorney proceeding pro se, brings this action against Defendant Central Intelligence Agency ("CIA") for its alleged noncompliance with Bothwell's requests for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.  Bothwell seeks an order compelling the release of information related to individuals purportedly connected to the assassinations of President John F. Kennedy and Senator Robert F. Kennedy.  (Dkt. No. 1 at 5-6.)  The Court earlier concluded that the CIA issued a proper "Glomar Response" under Exemption 3 of the FOIA and granted summary judgment to the CIA on that issue, but deferred judgment on whether the CIA's search for responsive documents was adequate.  *Bothwell v. CIA*, No. 13-cv-05439-JSC, 2014 WL 5077186, at *1 (N.D. Cal. Oct. 9, 2014).  Now pending before the Court is the CIA's renewed motion for summary judgment regarding the adequacy of its search.  (Dkt. No. 39.)  After carefully considering the parties' submissions, and having had the benefit of oral argument on February 5, 2015, the Court concludes that the CIA's search was adequate, except for its search for documents generated in July 1976 regarding Johnny Roselli.  The Roselli documents fall within 50 U.S.C. § 3141(c), which requires the CIA to search operational files under the circumstances presented here.

**BACKGROUND**

The background of this case has already been explained in detail in the Court's earlier order granting partial summary judgment for the CIA. *Bothwell*, 2014 WL 5077186, at *1-2. However, the relevant background is reiterated here.

On February 11, 2009, Bothwell filed a FOIA request seeking CIA records generated in July 1976 that relate to Johnny Roselli; records generated in 1963 that relate to Jean Souetre; and records generated in October 1963 that relate to David Morales and President John F. Kennedy. (Dkt. No. 28-1 at Ex. 1.) In July of that year, while his initial request was pending appeal, Bothwell made a second FOIA request seeking CIA records generated in May through July 1968 that relate to Thane Eugene Cesar, and CIA documents generated in May through July of 1968 that relate to Enrique Hernandez. (*Id.* at Ex. 5.) Bothwell filed this action in November of 2013. (Dkt. No. 1-1.)

While this litigation was pending, the CIA denied Bothwell's administrative appeals regarding his FOIA requests. *Bothwell*, 2014 WL 5077186, at *2. Regarding the February request, the CIA responded that it had not located any responsive records on Roselli or Morales, and asserted Exemptions 1 and 3 of the FOIA as for Souetre. *Id.* Regarding the July request, the CIA asserted that it had not located any responsive records. *Id.*

The CIA moved for summary judgment in August of 2014. (Dkt. No. 28.) In support of its motion, the CIA submitted an affidavit from Martha M. Lutz ("Lutz Decl."), the Chief of the Litigation Support Unit of the CIA. (Dkt. No. 28-1.) The CIA also submitted a supplemental declaration from Ms. Lutz ("Suppl. Lutz. Decl."), along with its reply in support of summary judgment. (Dkt. No. 30-1.) The Court granted judgment for the CIA with respect to assertions of Glomar Responses asserting FOIA Exemption 3 over certain categories of documents, but withheld judgment as to the adequacy of the CIA's search for documents.[1] At that stage of the litigation, Bothwell challenged the CIA's search primarily on three grounds: (1) that the CIA has given contradictory explanations for its refusal to produce records; (2) that the CIA's search did

---

[1] A "Glomar Response" is a refusal to confirm or deny the existence of records. *Hunt v. CIA*, 981 F.2d 1116, 1118 (9th Cir. 1992); *see also Phillippi v. CIA*, 546 F.2d 1009, 1011 (D.C. Cir. 1976).

United States District Court
Northern District of California

not include documents that reflected an unacknowledged affiliation; and (3) that the CIA should have searched paper records and its Miami Station for responsive records. *Bothwell*, 2014 WL 5077186, at *6.

The Court determined that it did not have sufficient information to rule on these three issues. In deferring judgment on the adequacy of the CIA's search, the Court ordered the CIA to submit an additional affidavit specifically addressing the following three areas of concern: (1) the databases that the National Clandestine Services ("NCS") and the Directorate of Support ("DS") searched, including detail about the framework of the databases, the files contained therein, and the search parameters used; (2) why the NCS search "did not locate any records that reflected an open and acknowledged CIA affiliation" while the DS search that "did not locate any records that were responsive"; and (3) what is the database of paper records Ms. Lutz refers to in her supplemental declaration and why was it not disclosed in her original declaration. *Id.* at *8.

In accordance with that Order, the CIA submitted a Second Supplemental Declaration of Ms. Lutz ("Second Suppl. Lutz Decl.") in support of its renewed motion for summary judgment. (Dkt. No. 39-1.) From the CIA's perspective, the Second Supplemental Lutz Declaration answers all of the Court's outstanding questions, and thus summary judgment is appropriate. (Dkt. No. 39.) In his opposition, Bothwell contends that the Court should reject the Second Supplemental Lutz Declaration and all others because they are all part of the CIA's attempt to deceive the Court. (Dkt. No. 40 at 9-10.) The focus of Bothwell's opposition, however, is *not* on the three topics the Court instructed the CIA to address. In fact, Bothwell does not address these three points at all. Instead, Bothwell argues that the CIA's search is inadequate because the agency did not search for "operational files" concerning Roselli and the other individuals. (*Id.* at 15-20.) According to Bothwell, the CIA's failure to search for "operational files" renders the search out of compliance with 50 U.S.C. § 3141(c) and requires a new search followed by *in camera* review of responsive documents. (*Id.* at 25-26.)

**LEGAL STANDARD**

The FOIA calls for "broad disclosure of Government records." *CIA v. Sims*, 471 U.S. 159, 166 (1985). To ensure broad disclosure, the FOIA "gives individuals a judicially-enforceable

3

right of access to government agency documents." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072, 1079 (9th Cir. 2004); 5 U.S.C. § 552. The FOIA specifically provides, in relevant part, that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005). The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Unlike the typical summary judgment analysis, however, "in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996). Indeed, courts are permitted to rule on summary judgment "solely on the basis of government affidavits." *Lion Raisins*, 354 F.3d at 1082. However, courts do not give government affidavits the "substantial weight" that they ordinarily receive if there is a showing of bad faith on the agency's part. *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992). In that case, the court must review the adequacy of the agency's search with heightened scrutiny. *Minier*, 88 F.3d at 802.

To prevail on summary judgment, "the government must establish that its search for responsive documents was reasonable and that it has described with reasonable specificity the nature of [any] responsive documents." *Hiken v. U.S. Dep't of Def.*, 521 F. Supp. 2d 1047, 1054 (N.D. Cal. 2007). The government may also avoid disclosure if it submits "a detailed affidavit showing that the information logically falls within one of the claimed [FOIA] exemptions." *Minier*, 88 F.3d at 800.

**DISCUSSION**

The only question before the Court is the adequacy of the CIA's search for responsive documents. The CIA has now submitted a more detailed declaration and contends that it has proven that its search was adequate. (Dkt. No. 39.) Plaintiff contends that the CIA has failed to

4

1    prove the adequacy of its search given contradictory statements during the course of this litigation
2    that intended to deceive both Plaintiff and the Court, and based on the CIA's failure to search for
3    "operational files" as 50 U.S.C. § 3141(b) defines them.  (Dkt. No. 40.)  Plaintiff asks the Court to
4    order the CIA to conduct a new search for documents under 50 U.S.C. § 3141(c) and further
5    requests that the Court review any responsive records *in camera* to determine whether the search
6    complied.  (Dkt. No. 40.)
7           In the FOIA context, the agency responding to a request has the burden of sustaining the
8    adequacy of its response by demonstrating that it did not improperly withhold records subject to
9    disclosure under the FOIA.  5 U.S.C. § 552(a)(4)(B); *U.S. Dep't of Justice v. Tax Analysts*, 492
10   U.S. 136, 142 n.3 (1989).  The agency must "demonstrate that it has conducted a search
11   reasonably calculated to uncover all relevant documents."  *Citizens Comm'n on Human Rights v.*
12   *Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995).  The "issue to be resolved is not
13   whether there might exist any other documents possibly responsive to the request, but rather
14   whether the *search* for those documents was *adequate*."  *Id.* (emphasis in original) (internal
15   quotation marks and citations omitted).
16          Courts assess the adequacy of an agency's search using "a standard of reasonableness
17   [that] depends, not surprisingly, upon the facts of each case."  *Zemansky v. U.S. EPA*, 767 F.2d
18   569, 571 (9th Cir. 1985).  "In demonstrating the adequacy of the search, the agency may rely upon
19   *reasonably detailed*, nonconclusory affidavits submitted in good faith."  *Id.* (emphasis added).
20   Thus, a district court "may grant summary judgment in favor of an agency on the basis of agency
21   affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements,
22   and if they are not called into question by contradictory evidence in the record or by evidence of
23   agency bad faith."  *Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d. Cir. 1999)
24   (emphasis in original) (internal quotation marks and citations omitted).
25          As to the requested records here, as before, the CIA claims that it has conducted "searches
26   reasonably and logically designed to locate any records subject to the FOIA pertaining to the
27   individuals identified in Plaintiff's FOIA requests, and located no responsive records."  (Dkt. No.
28   39 at 3.)

**A.     The CIA's Search**

Taken together, the Lutz Declarations explain the CIA's procedures for processing FOIA requests. (Dkt. Nos. 28-1, 30-1, 29-1.) As explained in the Court's earlier order granting partial summary judgment for the CIA, after conducting an initial search of certain databases to identify records already released, the agency's Information Review and Release Analysts ("IRRAs") determined that the following CIA directorates should be searched: the National Clandestine Service ("NCS"), because it is "responsible for the clandestine collection of foreign intelligence from human sources," and the Directorate of Support ("DS"), because it "houses the personnel and physical security functions of the CIA and would be the most likely to contain records of individuals who were applicants, contractors, or employees of the CIA." *Bothwell*, 2014 WL 5077186, at *4 (record citations omitted).

The DS Search

According to Lutz, the DS "conducted a search of its system of records that was reasonably calculated to discover any records responsive" to Bothwell's FOIA request using the names and aliases provided in his requests, but "[t]he DS did not locate any records that were responsive to [Bothwell's] requests. (Dkt. No. 38-1 ¶ 34.) In her Second Supplemental Declaration, Lutz further explains that the DS identified and searched three separate records systems in processing Bothwell's request: (1) a database that the Office of Security maintains that contains records related to security and security clearance processing, (2) a database that the Office of Medical Services maintains that contains records relating to medical service and personnel medical records; and (3) a database of compiled indexes of archived CIA paper records. (Dkt. No. 39-1 ¶ 3.) The Office of Security and Office of Medical Services databases were searched because their records would indicate if a given individual had an employment or other contractual relationship with the CIA, had security clearance-related issues, or had contact with the CIA's security or medical services. (*Id.*; Dkt. Nos. 28-1 ¶ 34.) The CIA searched all three databases using an electronic keyword search of the names and aliases in Plaintiff's FOIA requests along with common variants of the names. (*Id.* ¶¶ 3, 6; Dkt. No. 30-1 ¶ 4.) Lutz further explained the name and alias keyword search, providing an example of how the agency created search terms: "[f]or example, if the name

6

provided by the FOIA request was 'John' the directorate [ ] searched for common variants of the name John, such as: Jon, Johnny, and Johnnie." (Dkt. No. 39-1 ¶ 3 n.1.)

### The NCS Search

The NCS also conducted a "search of its system of records that was reasonably calculated to discover any records responsive" to Bothwell's FOIA requests, including "searches of the component's electronic database system using the names (including aliases) provided in the . . . requests." (Dkt. No. 28-1 ¶ 33.) The NCS search involved two separate databases. The first is the database of records compiled pursuant to the President John F. Kennedy Assassination Records Collection Act of 1992 ("JFK Collections Database"). (Dkt. No. 39-1 ¶ 4.) Lutz explains that the JFK Collections Database consists of records related to the assassination that the agency reviewed, identified, and organized under the supervision of an independent review board. (Dkt. No. 28-1 ¶ 37.) The documents were turned over to the National Archives and Records Administration for public release, and the CIA maintains a searchable electronic index of these released records, along with indexing information for approximately 1,100 documents not yet publicly released. (*Id.*) The JFK Collections Database also includes paper records not yet incorporated into the electronically searchable index; the NCS hand-searched these paper records. (Dkt. No. 30-1 ¶ 6; Dkt. No. 39-1 ¶ 4.) Second, the NCS searched the CIA Automated Declassification Review Environment ("CADRE") case management system, which "acts as a repository for documents previously reviewed for potential release pursuant to various release programs[.]" (Dkt. No. 39-1 ¶ 4.) The agency searched the JFK Collections Database and CADRE using a keyword search of the names in Bothwell's FOIA requests, along with aliases and common variants. (*Id.*)

Lutz notes for the first time in her Second Supplemental Declaration that the NCS searches "are limited by the 'operational file exemption' or 'ops file exemption.'" (*Id.* ¶ 4 n.2.) According to Lutz, the NCS concluded that there were no other "likely repositories for the type of records" that Bothwell requested, in part because "[d]atabases containing only NCS operational files are exempt from FOIA under Exemption (b)(3)" and the National Security Act of 1974, 50 U.S.C. § 3141 as amended (formerly the CIA Information Act, 50 U.S.C. § 431(a)), and thus "are not

1   subject to search."  (Dkt. No. 39-1 ¶ 4 n.2.)

2         Finally, Lutz's original declaration noted that the "NCS did not locate any records *that*

3   *reflected an open and acknowledged CIA affiliation* and were responsive to [Bothwell's] FOIA

4   request."  (Dkt. No. 28-1 ¶ 37 (emphasis added).)  However, Lutz has now clarified that this

5   qualifier was in error because the CIA did not issue a Glomar response to the NCS documents, and

6   "it is more accurate to simply state, without qualification, that the NCS, like the DS, did not locate

7   any records that were responsive to [Bothwell's] FOIA requests."  (Dkt. No. 39-1 ¶ 5.)

8         <u>The Paper Records Search</u>

9         Lutz originally noted that, with respect to paper records, the IRRAs also "searched [a]

10  database's indexing information to identify records that might relate to the subjects, then manually

11  reviewed any hits for responsiveness" but "[t]hese searches turned up no responsive documents."

12  (Dkt. No. 28-1 ¶¶ 36-37.)  In her supplemental declaration in support of summary judgment, Lutz

13  further explained the agency's search of paper records, in particular, the database used for the

14  search.  The agency searched an electronic database of compiled *indexes* of archived paper

15  records.  (Dkt. No. 30-1 ¶ 4.)  The CIA keeps this database separately from all of the individual

16  directorates, but the index can be searched by each directorate's subcomponent using a keyword

17  search.  (Dkt. No. 39-1 ¶ 3.)  In response to Bothwell's FOIA request, the DS searched this

18  database of paper records with respect to its Office of Security and Office of Medical Services

19  subcomponents.  (*Id.* ¶¶ 3, 6.)  In contrast, the NCS did not search this database.  (*See* Dkt. No. 30-

20  1 ¶ 6.)  Rather, the NCS considered paper records insofar as the JFK Collections Database

21  includes paper records not yet incorporated into the electronic database itself.  (*Id.* ¶ 6 & n.4.)

22        Lutz explains that she did not describe the paper records indexes in her earlier declarations

23  because she "did not describe any individual databases subjected to search . . . beyond the JFK

24  collections database and CADRE database" and that, "[t]ypically, the [CIA] does not discuss the

25  names of specific databases, beyond CADRE, in its public filings."  (*Id.* ¶ 7.)

26        **B.**    **Sufficiency of the Second Supplemental Lutz Declaration**

27        A CIA affidavit that "lays out in a detailed fashion: (1) the files that were searched; (2) the

28  reasons for searching those files; (3) the search terms employed; and (4) the search method used"

1   is sufficient to show "that the search was reasonable and thorough in both time and method." *Porter v. CIA*, 778 F. Supp. 2d 60, 69 (D.D.C. 2011); *see also Lawyers' Comm. for Civil Rights v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) ("[A]ffidavits or declarations submitted by the agency . . . must describe what records were searched, by whom, and through what processes." (internal quotations marks and citations omitted)). To satisfactorily explain the search method used, the affidavit "must detail files searched and the general scheme of the agency file system." *Rashad Ahmad Refaat El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 300 (D. Conn. 2008) (internal quotation marks and citation omitted); *Church of Scientology v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986) (noting that the affidavit should "identify the searched files and describe at least generally the structure of the agency's file system"). In other words, the agency must explain "how the agency determined which records systems and files were relevant." *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 154 (D.D.C. 2013); *see also Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (holding that "reasonably specific" affidavits should "set[ ] forth the search terms and the type of search performed, and aver[ ] that all files likely to contain responsive materials (if such records exist) were searched").

On the other hand, a conclusory affidavit "that generally asserts adherence to the reasonableness standard . . . is insufficient to carry the CIA's burden on summary judgment to prove that no substantial and material facts are in dispute and that it is entitled to judgment as a matter of law." *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007) (internal quotations, alterations, and citations omitted). The description of a CIA search is inadequate where the affidavit fails to "explain in reasonable detail the scope and method of the search conducted by the agency sufficient to demonstrate compliance with the obligations imposed by the FOIA." *Id.*

The Second Supplemental Lutz Declaration has provided further detail sufficient to answer all three of the Court's earlier questions: it is now clear why the CIA searched each database, the search terms employed, and the method used. *See Lawyers' Comm. for Civil Rights*, 534 F. Supp. 2d at 1131. In other words, the description of the final search itself now names the databases that the NCS and DS searched, provides an explanation of the agency's database systems more generally, both with respect to each directorate's electronic databases and the agency-wide index

of paper records, and explains away the earlier inconsistency regarding the NCS search. *Cf. Bothwell*, 2014 WL 5077186, at *6. Indeed, Bothwell does not respond to the three issues that the Court raised and that are the heart of the CIA's motion (the databases searched, the NCS's "open and acknowledge affiliation" qualifier, and the paper records search), and thus concedes these particular challenges. *See Ardente, Inc. v. Shanley*, No. 07-4479 MHP, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010) ("Plaintiff fails to respond to this argument and therefore concedes it through silence."). Thus, the Lutz Declarations provide sufficient detail regarding CIA FOIA procedures, the rationale behind searching the NCS and DS, and the description of the CIA's final search.

### C. Bothwell's Contentions

Bothwell now challenges the CIA's search on the grounds that: (1) taken together, the inconsistencies among the Lutz Declarations evidences the CIA's intent to deceive the Court; and (2) the CIA should have searched for and produced operational files under 50 U.S.C. § 3141(c). The Court will address each argument in turn.

#### 1. Inconsistencies in the Lutz Declarations

Bothwell asks the Court to discredit all of the Lutz declarations. Specifically, Bothwell points to Footnote 2 of the Second Supplemental Lutz Declaration, which notes that the CIA did not search for operational files. (Dkt. No. 39-1 at ¶ 4 n.2.) In Bothwell's view, this admission compounds the earlier inconsistencies in the Lutz declarations and, taken together, demonstrate the CIA's intent to deceive the Court. Thus, Bothwell contends, the Court should not accord the Lutz declarations "substantial weight," *Hunt*, 981 F.2d at 1119, and should instead review the adequacy of the agency's search with heightened scrutiny, *Minier*, 83 F.3d at 802. For the reasons explained below, the Court concludes that the inconsistencies in the Lutz Declarations do not rise to the level of deception or bad faith, and thus the Lutz Declarations are still entitled to substantial weight.

There are three primary "inconsistencies" among Lutz's declarations: (1) that the earlier declarations were short on detail while the later declarations provide further color, (2) Lutz earlier stated that the NCS only searched for records reflecting an open and acknowledged CIA affiliation, whereas Lutz now removes the qualifier in its entirety, and (3) Lutz states for the first

time in her latest declaration that the CIA did not search for "operational files." None of these inconsistencies is indicative of the CIA's bad faith, although the third may render the search itself inadequate, as discussed in detail below.

First, that the Lutz declarations provided further detail as the summary judgment briefing progressed is not evidence of bad faith. The Court declines to read the CIA's response to issues raised in an opposition or in compliance with Court orders to provide further information as an indication of hide-the-ball tactics or other improper conduct.

Next, as to Lutz's mistake in initially noting that the NCS search "did not locate any records that reflected an *open and acknowledged CIA affiliation*," Lutz has since admitted that the "open and acknowledged affiliation" qualifier was merely stated in error. As Lutz notes, the agency's initial letters to Bothwell did not include this qualifier, and instead "directly state[d] without qualification that [the agency was] unable to locate any records responsive to his NCS request. (Dkt. No. 39-1 ¶ 5.) Lutz further notes that the qualifier is unnecessary in the context of the NCS search because the agency did not assert a partial Glomar response. (*Id.*) This error does not call into question the adequacy of the CIA's search; the Court concludes that the language qualifying the search was included in error as a mere oversight, rather than as any bad faith attempt to mislead either Bothwell or the Court. Indeed, Courts have repeatedly found that "minor ambiguities" in an agency's affidavits "support neither [an] allegation that [the agency's] search procedures were inadequate, nor an inference that it acted in bad faith[.]" *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1202 (D.C. Cir. 1991); *see also Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 857 F. Supp. 2d 129, 141 (D.D.C. 2012) ("[T]he internal inconsistency appears to be the result of an oversight rather than an attempt to mislead [plaintiff] or the Court, and thus does not evince bad faith nor constitute countervailing evidence raising substantial doubts as to the adequacy of the agency's search."). So it is here. While not a model of clarity, the Court does not find the agency's mistake as anything but that.

Nor does the Court view the Second Supplemental Lutz Declaration as unfairly, or in bad faith, notifying Bothwell and the Court that the NCS search did not search for operational files. Bothwell boldly contends that "[t]his exclusion of so-called 'operational' records . . . was, until

11

December, hidden from the Court and, as far as we can tell, from the United States Attorney as well." (Dkt. No. 40 at 13.) As Defendant points out, the agency's position has been referenced throughout summary judgment briefing, albeit not explicitly in one of Lutz's declarations until the most recent. (*See, e.g.*, Dkt. No. 28-1 Ex. 8 (stating the agency's position that "[t]he CIA Information Act, 50 U.S.C. § 431, as amended, exempts CIA operational files from the search, review, publication, and disclosure requirements of the FOIA.").) Thus, the Court does not glean from this statement that the CIA is somehow misleading either Bothwell or the Court. Whether the NCS search was sufficient given the agency's statement about operational files is a question that will be addressed separately, below.

### 2. Operational Files

Bothwell's main argument that the CIA's search was inadequate is that the CIA is actually obligated to search for and produce "operational files" despite its recent statement to the contrary. In response, the CIA contends that operational files are exempt from the FOIA, that the circumstances presented here do not warrant any exception from that rule, and that even if it were obligated to search for operational files, its search was adequate and included any relevant operational files.

Under 50 U.S.C. § 3141, the Director of the CIA "may exempt operational files of the Central Intelligence Agency from" FOIA. 50 U.S.C. § 3141(a). "Operational files are defined in turn to include certain files of the Directorate of Operations, the Directorate for Science and Technology, and the Office of Personnel Security that contain sensitive information about CIA methods." *ACLU v. Dep't of Def.*, 351 F. Supp. 2d 265, 270 (S.D.N.Y. 2005) (citing 50 U.S.C. § 431, the predecessor to 50 U.S.C. § 3141). These include files "which document investigations conducted to determine the suitability of potential foreign intelligence or counterintelligence sources . . . except that files which are the sole repository of disseminated intelligence are not operational files." *Id.*

Bothwell first argues that because the record does not contain any evidence that current CIA director John Brennan has so exempted CIA operational file, the exemption does not apply. The Court disagrees. First, there is nothing in the statute that requires a current CIA director to

exempt the files; the provision merely states that the Director of the CIA *may* exempt operational files. Thus, under the plain language of the statute, once the Director exempts operational files they are exempt. Second, in *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007), the D.C. Circuit held that CIA "[o]perational files are exempt from FOIA disclosure" under Section 3141. Further, in *Davy v. CIA*, 357 F.Supp.2d 76 (D.D.C. 2004), the district court noted that in 1995 the Director of the CIA exempted its operational files from FOIA disclosure. *Id* at 82. Finally, Lutz declares that CIA operational files are exempt. (Dkt. No. 39-1 ¶ 4 n.2.) The CIA has thus met its burden of showing that a CIA director has exempted operational files from FOIA disclosure as permitted by law. Plaintiff's reliance on the New York district court's decision in *ACLU*, 351 F. Supp. 265, is misplaced. There the court apparently did not have before it any case or evidence that suggested that the CIA director had exempted operational files. Here, in contrast, Defendant has identified *Morley*, decided two years after *ACLU*, and the Lutz declaration. On this record the exemption applies in the first instance.

However, the CIA Information Act creates an exception to this exemption. Such operational files remain subject to the FOIA in three situations: (1) searches by individuals for information about themselves, (2) searches relating to special activities, or (3) searches relating to investigations of improper or illegal conduct. The last exception is at issue here, and provides that:

> Notwithstanding subsection (a) of this section, exempted operational files shall continue to be subject to search and review for information concerning—
> . . .
> (3) the specific subject matter of an investigation by the congressional intelligence committees, the Intelligence Oversight Board, the Department of Justice, the Office of General Counsel of the Central Intelligence Agency, the Office of Inspector General of the Central Intelligence Agency, or the Office of the Director of National Intelligence for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity.

50 U.S.C. § 3141(c)(3). Bothwell contends that CIA operational files relating to Roselli concern an investigation by the U.S. Senate Select Committee to Study Government Operations with Respect to Intelligence Activities (the "Church Committee"), and thus fall under Section

13

1341(c)(3)'s purview.

"For exception (3) to apply, the plain text directs that three questions must be answered in the affirmative." *Morley,* 508 F.3d at 1116. First, and in this context, is the Church Committee a "congressional intelligence committee" within the meaning of Section 3141(c)(3)? The CIA does not dispute that it is. *See also id.* at 1116-17 (concluding that the Church Committee so qualifies under the CIA Information Act).

"Second, does [Plaintiff's] request concern 'the specific subject matter of an investigation by" the Church Committee. *Id.* at 1117. As set forth in Plaintiff's exhibits to his opposition to the CIA's motion, the Church Committee investigated "at what level were the Castro [assassination] plots authorized or known about outside of the Central Intelligence Agency?" (Dkt. 40 Ex. 7 at 108.) In particular, the investigation included "whether officials of the Kennedy Administration authorized or were aware of the second attempt to assassinate Castro involving John [Roselli]." (Dkt. No. 40 at 18 & Ex. 7 at 109; *see also* Ex. 7 at 117.) The Committee's interim report addresses whether President Kennedy himself "was made aware" of the CIA's use of Roselli in a Castro assassination plot. (*Id.* at Ex. 7 at 125 *et seq.*) Thus, Plaintiff's request for documents created in July 1976 related to Roselli concern a specific subject matter of the Church Committee's investigation.

*Morley* is instructive. In that FOIA action, the plaintiff sought all records related to George Efythron Joannides, the former case officer for the anti-Castro organization known as the *Directorio Revolucionario Estudantil* ("DRE"). 508 F.3d at 1113. The plaintiff believed documents about Joannides might "shed new light" about the Kennedy assassination. The CIA there, as here, did not search operational files responsive to the plaintiff's request; instead, the CIA argued that such operational files were exempt and not subject to the Section 3141(c)(3) exception. With respect to the specific subject matter requirement, the CIA argued that because the Church Committee's investigation was not specifically about Joannides, the exception did not apply. *Id.* at 1117. The D.C. Circuit disagreed. It held that "'the specific subject matter of an investigation' is satisfied where the investigating committee would have deemed the records at issue to be central to its inquiry." *Id.* at 1118. The court reasoned that "[t]he Church Committee

14

posed a targeted inquiry investigating the performance of the intelligence agencies surrounding a particular event. The role of individual CIA officers during this event was key to such an inquiry, information that the committee would have sought out rather than merely happened upon." So it is here. Documents regarding Roselli would have been key to the Church Committee's investigation of whether the CIA advised the Kennedy administration of its involvement with him.

      The CIA's insistence that Plaintiff's request does not fall within the subject matter of the Committee's investigation because the interim report upon which Plaintiff relies was issued before July 1976—the time period of the documents requested—is not persuasive. Simply because the "interim" report was issued does not mean the Committee was no longer investigating the specific subject matter discussed in the interim report. The Court notes that Plaintiff asserts (but does not identify any evidence to support the assertion) that Roselli testified before the Church Committee, but then was murdered before he was scheduled to resume his testimony. If this fact were true, it would further support the Court's conclusion that Roselli, and, in particular, documents generated around the time of his murder, concerned the specific subject matter of the Committee. As Plaintiff does not cite any evidence, however, the Court does not consider the contention. Nonetheless, for the reason explained above, Plaintiff has still established that the specific subject matter of the investigation concerned Roselli.

      Finally, the third inquiry that the Court must answer in the affirmative for the exemption to apply is whether the Church Committee's "investigation [was] 'for any impropriety, or violation of law, Executive order, or Presidential directive, in the conduct of an intelligence activity'[.]" *Morley*, 508 F.3d at 1118 (citation omitted). The *Morley* court held that it was: "The Church Committee investigation meets this criteria because it sought to assess the performance of the intelligence agencies in conducting their own investigations of the [Kennedy] assassination." *Id.* at 1118. The Court agrees with the *Morley* court's conclusion. *But see Sullivan v. CIA*, 992 F.2d 1249, 1255 (1st Cir. 1993) (concluding that the Church Committee's investigation "was not a direct investigation into CIA wrongdoing" and thus did not trigger FOIA obligations under the Section 3141 exception). Thus, the exception to the operational files exemption applies and the CIA was required to search its operational files for documents generated in July 1976 regarding

15

Roselli. The Court's conclusion does not apply to Plaintiff's request for documents regarding Morales, Hernandez or Cesar; Plaintiff has not offered any evidence or argument as to why the exception to the operation files exemption should apply to such documents.

The CIA has one final argument. Given the nature of Plaintiff's request—that is, that he is interested in the documents because of a possible connection to the Kennedy assassination—the CIA logically assumed that any responsive documents, including operational files, would be found in the JFK collections database which includes all records relating to President Kennedy's assassination, *including operational files.* Thus, the CIA explains, if the CIA possesses any documents responsive to Plaintiff's Roselli request, its search of that database would have already uncovered them. In other words, because a search of the JFK collections database would be adequate to uncover relevant operational files, the CIA was under no separate obligation to start from scratch and begin a new search for assassination-related operational files, as such an approach would be unreasonable. *See Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986) (noting that an agency's search "need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the [plaintiff's] specific request").

The difficulty with this argument is that neither the Lutz Declarations, nor CIA counsel when pressed at oral argument, represent that any documents regarding Roselli generated in July 1976 would have been placed in the JFK database; instead, Defendant argues that because *Plaintiff* believes such documents are relevant to the Kennedy assassination they should be in the database. Defendant's response is inadequate: the question is whether Defendant would have placed the responsive documents in the database, and it carefully makes no representation that it has done so or would have done so.

## CONCLUSION

For the reasons explained above, and in the Court's earlier orders, the Court GRANTS in part and DENIES in part the CIA's renewed motion for summary judgment. The motion is granted in all respects, except as to its search for documents generated in July 1976 regarding Roselli. The parties shall provide the Court with a written joint status update as to how the case should proceed on or before June 29, 2015.

16

This Order terminates Docket No. 39.

**IT IS SO ORDERED**.

Dated: June 4, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge