UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY P.X. BOTHWELL,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN O. BRENNAN, et al.,<br><br>    Defendants. | Case No. 13-cv-05439-JSC<br><br>**ORDER GRANTING RENEWED MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 52 |

Plaintiff Anthony P.X. Bothwell ("Bothwell"), an attorney proceeding pro se, brings this action against Defendant Central Intelligence Agency ("CIA") for its alleged noncompliance with Bothwell's request for information under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Bothwell seeks an order compelling the release of information related to individuals purportedly connected to the assassinations of President John F. Kennedy and Senator Robert F. Kennedy. (Dkt. No. 1 at 5-6.) The Court earlier concluded that the CIA issued a proper "Glomar Response" under Exemption 3 of the FOIA and that the CIA's search was adequate and granted summary judgment to the CIA except for its search for documents generated in July 1976 regarding Johnny Roselli. *Bothwell v. CIA*, No. 13-cv-05439-JSC, 2015 WL 3523212, at *1 (N.D. Cal. June 4, 2015) ("*Bothwell II*"); *Bothwell v. CIA*, No. 13-cv-05439-JSC, 2014 WL 5077186, at *1 (N.D. Cal. Oct. 9, 2014) ("*Bothwell I*"). As for the July 1976 Roselli documents, the CIA had initially excluded from its search any operational files under the meaning of 50 U.S.C. § 3141(c)—as described in the Court's earlier Order—but the Court concluded that the CIA must search for responsive documents among its operational files under the circumstances presented here. *Bothwell II*, 2015 WL 3523212, at *1.

Now pending before the Court is the CIA's second renewed motion for summary judgment

regarding the adequacy of its search for the July 1976 Roselli documents among the agency's operational files. (Dkt. No. 52.) After carefully considering the parties' submissions, the Court concludes that oral argument is not necessary, *see* N.D. Cal. L.R. 7-1(b), and that the CIA's search for the July 1976 Roselli documents was adequate and therefore GRANTS the CIA's second renewed motion for summary judgment.

## BACKGROUND

The background of this case has already been explained in detail in the Court's earlier order granting partial summary judgment for the CIA. *Bothwell II*, 2015 WL 3523212, at *1-2; *Bothwell I*, 2014 WL 5077186, at *1-2. However, the background relevant to the sole remaining dispute is included here.

Plaintiff's FOIA request sought "[a]ll records within the possession, custody, or control of the CIA, generated in July 1976 that relate to Johnny ROSELLI, a.k.a. John ROSELLI, a.k.a. Filippo SACCO." (Dkt. No. 49-1 ¶ 3.) The CIA's earlier declarations explained that the agency did not search for responsive documents among its operational files. And indeed, ordinarily such files are exempted from disclosure. However, in the Court's Order granting in part the CIA's first renewed motion for partial summary judgment, the Court concluded that Bothwell's request triggered an exception to the operational files exemption: specifically, it implicated the specific subject matter of an investigation of the U.S. Senate Select Committee to Study Government Operations with Respect to Intelligence Activities (the "Church Committee") into the CIA's performance in connection with the Castro and Kennedy assassinations, and therefore the CIA was obligated to search for responsive documents in its operational files. *Bothwell II*, 2015 WL 3523212, at *8 (explaining why an exception to the operational files exemption applied). Accordingly, the Court ordered the CIA to conduct a search of operational files reasonably calculated to uncover records responsive to Plaintiff's request for all records within the possession, custody, or control of the CIA, generated in July 1976 that relate to Johnny Roselli. *Bothwell II*, 2015 WL 3523212, at *9-10.

Following that Order, the CIA conducted a search of operational files reasonably calculated to uncover records responsive to Plaintiff's request. (*See* Dkt. No. 49-1 ¶ 3.) To

describe its latest search, the CIA has submitted the Third Supplemental Declaration of Martha M. Lutz, Information Review Officer for the Litigation Information Review Office of the CIA. (Dkt. No. 49-1.) According to the Third Supplemental Lutz Declaration, the CIA's latest efforts searched three different databases most likely to contain responsive operational files: (1) the NCS[1] system of records database that houses records generated by the NCS, regardless of media, related to the collection of human intelligence and covert action; (2) an NCS database that maintains records related to covert employees; and (3) a compilation of indexes which catalogue archived CIA paper records. (*Id.* ¶ 3.) CIA policy regarding searches for archived paper records begins with a database query, and if that search suggests the existence of paper files, then CIA staff retrieves the archived paper files to review them for individual responsive documents. (Dkt. No. 30-1 ¶ 4.) Pursuant to CIA policy for searching archived paper records, the CIA queried the databases using a simple keyword search for the names and aliases for Roselli. (Dkt. No. 49-1; *see also* Dkt. No. 30-1 ¶ 4 (describing the CIA's search terms).) Individuals who are experts in the NCS databases conducted the search of the three databases, which did not suggest the existence of any paper files pertaining to Roselli, so NCS staff did not pull any archived files to conduct a further search of paper records. (Dkt. No. 49-1 ¶ 3 & n.3; *see also* Dkt. No. 30-1 ¶ 4 (noting that the CIA's standard FOIA practices are to retrieve archived paper files and review them for responsive paper documents only when the compiled indexes suggest the existence of paper files likely to contain responsive records).)

## LEGAL STANDARD

The FOIA calls for "broad disclosure of Government records." *CIA v. Sims*, 471 U.S. 159, 166 (1985). To ensure broad disclosure, the FOIA "gives individuals a judicially-enforceable right of access to government agency documents." *Lion Raisins v. Dep't of Agric.*, 354 F.3d 1072,

---

[1] As set forth in the Court's earlier Orders, the NCS is the National Clandestine Service, the CIA directorate "responsible for the clandestine collection of foreign intelligence from human sources[.]" *Bothwell I*, 2014 WL 5077186, at *4 (record citations omitted). According to Ms. Lutz, the CIA has since begun a reorganization plan of its directorates, and the NCS is now referred to as the Directorate of Operations. (Dkt. No. 49-1 ¶ 2 n.2.) The Lutz Declaration and this Order nonetheless refer to the NCS for the sake of consistency with prior orders in this case.

1079 (9th Cir. 2004); 5 U.S.C. § 552. The FOIA specifically provides, in relevant part, that: "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A).

Summary judgment is the procedural vehicle by which nearly all FOIA cases are resolved." *Nat'l Res. Def. Council v. U.S. Dep't of Def.*, 388 F. Supp. 2d 1086, 1094 (C.D. Cal. 2005). The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Unlike the typical summary judgment analysis, however, "in a FOIA case, we do not ask whether there is a genuine issue of material fact, because the facts are rarely in dispute." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996). Indeed, courts are permitted to rule on summary judgment "solely on the basis of government affidavits." *Lion Raisins*, 354 F.3d at 1082. However, courts do not give government affidavits the "substantial weight" that they ordinarily receive if there is a showing of bad faith on the agency's part. *Hunt v. CIA*, 981 F.2d 1116, 1119 (9th Cir. 1992). In that case, the court must review the adequacy of the agency's search with heightened scrutiny. *Minier*, 88 F.3d at 802.

To prevail on summary judgment, "the government must establish that its search for responsive documents was reasonable and that it has described with reasonable specificity the nature of [any] responsive documents." *Hiken v. U.S. Dep't of Def.*, 521 F. Supp. 2d 1047, 1054 (N.D. Cal. 2007). The government may also avoid disclosure if it submits "a detailed affidavit showing that the information logically falls within one of the claimed [FOIA] exemptions." *Minier*, 88 F.3d at 800.

**DISCUSSION**

The sole issue before the Court is the adequacy of the CIA's search of archived CIA paper records for operational files relating to Roselli. The CIA bears the burden of establishing "that it has conducted a search reasonably calculated to uncover all relevant documents." *Citizens Comm'n on Human Rights v. Food & Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir. 1995). The

4

"issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Id.* (emphasis in original) (internal quotation marks and citation omitted); *see also Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 965, 987 (9th Cir. 2009) (same).

Courts assess the adequacy of an agency's search using "a standard of reasonableness [that] depends, not surprisingly, upon the facts of each case." *Zemansky v. U.S. EPA*, 767 F.2d 569, 571 (9th Cir. 1985). "While there is no requirement that an agency search every record system, the search must be conducted in good faith using methods that are likely to produce the information requested if it exists." *Lawyers' Comm. for Civil Rights of San Francisco Bay Area v. U.S. Dep't of Treasury*, 534 F. Supp. 2d 1126, 1130 (N.D. Cal. 2008) (citations omitted). If the agency conducts such a search, the search is adequate. *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999). A search is not inadequate merely because it fails to uncover every existing responsive document. *Safecard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also Iturralde v. Comptroller of Currency,* 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."). Thus, an agency is not "required to reorganize its files in response to a plaintiff's request in the form in which it was made." *Church of Scientology v. IRS*, 792 F.2d 146, 150-51 (D.C. Cir. 1986). Instead, a search is inadequate only when the agency fails to "show, with reasonable detail, that the search method . . . was reasonably calculated to uncover all relevant documents." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

"In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith." *Zemansky*, 767 F.2d at 571. Thus, a court may grant summary judgment in favor of an agency on the basis of agency affidavits if they contain *reasonable specificity* of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Grand Central P'ship, Inc. v. Cuomo*, 166 F.3d 473, 478 (2d Cir. 1999) (emphasis in original) (internal quotation marks and citation omitted). Any such evidence of agency bad faith

1  must be non-speculative to rebut the presumption of good faith accorded to the agency's affidavit,
2  *Lawyers' Comm. for Civil Rights*, 534 F. Supp. 2d at 1137; hypothetical assertions are not enough.
3  *Oglesby*, 920 F.2d at 67 n.13.

4      Here, the CIA has submitted the Third Supplemental Lutz Declaration to describe the
5  CIA's latest search.  (*See* Dkt. No. 49-1.)  A CIA affidavit that "lays out in a detailed fashion: (1)
6  the files that were searched; (2) the reasons for searching those files; (3) the search terms
7  employed; and (4) the search method used" is sufficient to show "that the search was reasonable
8  and thorough in both time and method."  *Porter v. CIA*, 778 F. Supp. 2d 60, 69 (D.D.C. 2011); *see
9  also Lawyers' Comm. for Civil Rights*, 534 F. Supp. 2d at 1131 ("[A]ffidavits or declarations
10 submitted by the agency . . . must describe what records were searched, by whom, and through
11 what process.") (internal quotation marks and citations omitted).  To satisfactorily explain the
12 search method used, the affidavit "must detail the files searched and the general scheme of the
13 agency file system."  *Rashad Ahmad Refaat El Badrawi v. Dep't of Homeland Sec.*, 583 F. Supp.
14 2d 285, 300 (D. Conn. 2008) (internal quotation marks and citations omitted); *Church of
15 Scientology*, 792 F.2d at 151 (D.C. Cir. 1986) (noting that an affidavit should "identify the
16 searched files and describe at least generally the structure of the agency's file system").  In other
17 words, the agency must explain "how the agency determined which records systems and files were
18 relevant."  *Nat'l Sec. Counselors v. CIA*, 960 F. Supp. 2d 101, 154 (D.D.C. 2013).  In contrast, the
19 description of a CIA search will be inadequate where it fails to "explain in reasonable detail the
20 scope and method of the search conducted by the agency sufficient to demonstrate compliance
21 with the obligations imposed by the FOIA."  *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir.
22 2007).

23     Here, the Third Supplemental Lutz Declaration, particularly when read in conjunction with
24 the earlier Lutz Declarations, provides sufficient detail to answer all of the questions above with
25 respect to the CIA's search responsive documents among its operational files.  The declaration
26 sufficiently describes the databases searched, the search terms employed, provides an explanation
27 of the agency's database systems more generally, and identifies the persons who conducted the
28 search.  Thus, the Third Supplemental Lutz Declaration is sufficient to meet the CIA's burden of

laying out in a detailed fashion the CIA's search, and demonstrates that the search was adequate. *See Hamdan v. U.S. Dep't of Justice*, NO. 13-55172, 2015 WL 4773499, at *6 (9th Cir. Aug. 14, 2015) (concluding that the FBI's search of databases where it maintains records for use in investigation "using many variations of the terms suggested by Plaintiffs to account for spelling or other inconsistencies, was a diligent search for . . . documents in the places in which they might be expected to be found") (internal quotation marks and citation omitted).

Bothwell does not appear to take issue with the CIA's search in terms of the databases selected or the search terms used. Instead, he raises a single specific challenge to the adequacy of the agency's search: that when the agency's database inquiries yielded no responsive results, the CIA nevertheless should have had its employees search and review the actual, hard-copy paper files on the Church Committee to look for documents about Roselli. (*See* Dkt. No. 53 at 2 (arguing that it is "reasonable to require the CIA to look at one month's worth of paper records in its Church Committee file to unveil any operations records therein regarding Roselli"); *id.* at 4 (contending that it would not take CIA staff much time "to search one month's collection of paper files on the Church Committee investigation"); *id.* at 5 (seeking an order directing the CIA to manually search paper documents "in its files related to the [Church Committee]").) The problems with this argument are threefold.

First, Plaintiff's FOIA request did not request Church Committee documents in particular, but rather documents about Roselli. Thus, if the CIA had limited its search to Church Committee documents, that would not have been reasonable. And the CIA's database searches would *include* documents that mention Roselli in conjunction with the Church Committee investigation, since it used Roselli's name as a search term. In other words, any documents relating to both Roselli *and* the Church Committee would fall within the scope of the search, and any documents solely about the Church Committee but not mentioning Roselli would not be responsive to Bothwell's request. Moreover, Bothwell's argument relies on the unsupported assertion that the CIA maintains particular paper files dedicated solely to the Church Committee investigation. Bothwell's speculation that separate, stand-alone Church Committee files exist is not enough to overcome the presumption of good faith entitled to the Third Supplemental Lutz Declaration, and thus that the

1  CIA's search would have uncovered responsive operational files regarding Roselli. *See Oglesby*,
2  920 F.2d at 67 n.13; *Lawyers' Comm. for Civil Rights*, 534 F. Supp. 2d at 1137. And if there are
3  no such stand-alone files, the CIA is not required to reorganize its files to compile Church
4  Committee-specific files. *See Church of Scientology*, 792 F.2d at 150-51.

5  Bothwell's reliance on *ACLU of New Jersey v. Department of Justice*, No. 11-2553, 2012
6  WL 4660515 (D.N.J. Oct. 2, 2012), misses the mark. In that case, the ACLU made a FOIA
7  request to the FBI for documents related to the agency's use of race and ethnicity in conducting
8  investigations. *Id.* at *1. The FBI conducted searches of various databases using a range of search
9  terms. The agency directed its personnel to "review [its] database systems as well as paper or
10 manual files" for relevant documents. *Id.* at *2, *4. The district court concluded that the agency's
11 search was adequate. *Id.* at *5. But *ACLU of New Jersey* does not describe how the agency
12 searched the paper or manual files, nor does it stand for the proposition that Bothwell urges: that
13 physical search of paper files following keyword-based searching in databases where those files
14 are archived is *required* to render a search adequate.

15 Bothwell's reliance on *National Day Laborer Organizing Network v. United States*
16 *Immigration and Customs Enforcement Agency*, 877 F. Supp. 2d 87 (S.D.N.Y. 2012), fares no
17 better. Bothwell emphasizes the district court's comment that "[s]imple keyword searching is
18 often not enough" to render a search adequate. *Id.* at 108-09. That may be so. But *National Day*
19 *Laborer Organizing Network* involved "the largest FOIA search in the history of the" agency,
20 where the vastness of the search made it unclear whether certain search terms would actually
21 capture all responsive documents. *Id.* at 111. There, the court found the search inadequate
22 because the agency had failed to disclose the search terms used at all and directed the parties to
23 meet and confer to choose search terms. *Id.* at 110. Not so here, where the request at issue is
24 limited to documents regarding Roselli, the CIA searched using variations of Roselli's name and
25 aliases, and Bothwell has not actually challenged the search terms used.

26 Finally, Plaintiff urges that the public interest in learning the truth of the Kennedy
27 Assassination outweighs any burden on the CIA to conduct a manual search. (Dkt. No. 53 at 4-5.)
28 Even if that were the case, the relevant legal standards regarding the adequacy of a FOIA search

do not take into account the importance of the subject matter of a FOIA request. At bottom, "a search need not be perfect, only adequate[.]" *DiBacco v. Army*, 795 F.3d 178, 194 (D.C. Cir. 2015) (quotation marks and citation omitted). Thus, while Bothwell may have preferred that the CIA engage in a manual paper files search, the CIA's decision to not comb through all paper files given the lack of responsive hits from its database search using variants of Roselli's name as a keyword is adequate to discharge its duties under the FOIA.

## CONCLUSION

For the reasons explained above, and in the Court's earlier orders, the Court GRANTS the CIA's renewed motion for summary judgment. The Court will enter judgment in the CIA's favor. The Clerk of Court shall close the case.

This Order terminates Docket No. 52.

**IT IS SO ORDERED.**

Dated: November 3, 2015

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge